McCahon v. Comm'rs of Leavenworth Co.

———————

JAMES McCAHON v. THE COMM'RS OF LEAVENWORTH CO.

OFFICE AND OFFICER—*Officers de facto and de jure.* An officer *de facto* must be in the actual possession of the office and have the same under his control. If the officer *de jure* is in possession of the office—if the officer *de jure* is also the officer *de facto*—then no other person can be an officer *de facto* for that office. Two persons cannot be officers *de facto* for the same office at the same time.

*Error from Leavenworth District Court.*

THE controversy in this case arose in consequence of an attempt by the legislature to fix the term of office of county commissioners for Leavenworth county at *one* year; (§ 9, ch. 25, Gen. Stat. 1868.)   B. R. Moore and eleven other persons were duly elected commissioners for such county at the November election, 1867, under the laws then in force, (ch. 87, § 2, Comp. Laws 1862, and ch. 45, laws of 1867, § 1,) and their terms commenced on the second Monday of January, 1868.   Ch. 25, Gen. Stat., took effect October 31, 1868, and under the supposed authority of § 9 thereof John T. McWhirt, S. N. Latta, F. A. Miller, and nine other persons were at the November election of that year elected county commissioners of said county; but the board of commissioners chosen in 1867, regarding the election of 1868 as void, refused to canvass the votes cast thereat for county commissioners, and continued to act as such officers themselves.   Latta and Miller, two of the new board, instituted proceedings in *mandamus* to compel the old board to canvass said votes.   The case was brought to this court, (5 Kas., 688,) where the question was settled in favor of the old board.   But before a decision was had in that case McWhirt and his associates, on the 2d of February 1869, met and canvassed the votes cast for commissioners in 1868, declared themselves elected, and qualified as such officers, and pretended to act as commissioners; and *James McCahon,* plaintiff in error, claiming that Leavenworth county was indebted to him for services as an attorney-at-law, presented his claim to McWhirt and his associates who audited and allowed it; but the county clerk declined to issue any order or warrant therefor.   *McCahon* then brought his action in the district court, counting upon the order of allowance in his favor made by McWhirt and others as commissioners, and upon this petition issue was joined by answer filed by the county attorney.   The case was tried by the court, and a decision and judgment given and rendered for the defendant in July, 1869.   *McCahon* brings the case to this court by petition in error.

*F. P. Fitzwilliam*, for plaintiff in error:

1. The auditing and allowance of an account against the county is a judicial act, and has the force and effect of a judgment: Gen. Stat., 260, §§ 30, 31; 3 Iowa, 467; 35 Barb., 408. When a demand against the county has been audited and allowed, or is in a liquidated form, an action lies upon it in the district court: 5 Iowa, 15; 25 Wend., 680; 10 Wis., 49, 69. A creditor of the county performs his duty when he appears before the board and procures his claim to be audited and allowed. It is then the duty of the county to pay. The creditor is under no legal obligation to wait upon the clerk or chairman of the board for a warrant: 35 Barb., 653; 50 Penn. St., 351.

2. McWhirt and others having acted as county commissioners under color of an election authorized by a statute of the state legislature, at the time of the allowance of the plaintiff's account, they were *de facto* such commissioners. Their authority cannot be questioned in a collateral way, and their official acts until their ejection or abandonment of the office are valid: 1 Texas, 653; 9 Johns., 135; 9 Wend., 17; 13 Mass. 170; 5 Watts, 538; 1 Nev., 188; 10 Mich., 250; 19 Conn. 423; 48 Me., 79; 19 Ind., 356; 2 Iowa, 75; 2 Metc., (Ky.) 493.

Said persons acting as commissioners were clearly not usurpers, having assumed the duties of the office under color of an election, after a decision of the district court establishing their right to the office, although such decision was, after the allowance of the plaintiff's account, reversed by the supreme court. 12 Ohio, 16.

*D. J. Brewer*,* county attorney, for defendant in error:

1. This action is brought by the professional counsel and adviser of twelve gentlemen, attempting without warrant of law to act as commissioners of Leavenworth county; and he

[ * THIS case was brought to this court before the election of Mr. Justice BREWER as a member of this court, and the only brief on file on behalf of the board of commissioners was filed by him as county attorney.—REPORTER.]

brings his action not against those gentlemen who sought his counsel and labors, but against the county. His petition does not disclose the particular services rendered; but if they were such as the county had a right to command, then the county attorney should have performed them, and the plaintiff cannot recover.

Where there is a county attorney whom the people have elected to attend to the county business, a legal board of county commissioners have no power to employ other attorneys to attend to such county business; hence the allowance of plaintiff's claim on the face of it is void, even if made by a legal county board. Gen. Stat., p. 284, §§ 136, 137, 138.

No action can be maintained against a county upon a claim allowed by the county board. The remedy is by mandamus, to compel the chairman and county clerk to issue a warrant. 4 Kas., 249, 260; 29 N. Y., 645.

2. But the "allowance" was not by the board of county commissioners, but by strangers, acting without authority. The time for county officers to enter upon the discharge of their duties is the second Monday of January. Moore and his associates were the county commissioners *de jure*. The election in November, 1868, was void. McWhirt and his associates were not county commissioners. True, if Moore and his associates had ceased to act on the second Monday of January, 1869, and McWhirt and others had then commenced acting with general consent, it might be said that they were commissioners *de facto*. But when the legal commissioners continued to act after such time, undisturbed by McWhirt and his friends, these latter gentlemen cannot at any time during the year which may suit their convenience, and without taking any other proceedings, enter the county clerk's office, open the poll books, declare themselves elected, and assuming to act for a few days, claim that they are commissioners *de facto*, and their acts binding on the county. 10 Paige, 223.

The minutes of their proceedings are not a public record. They are not attested by the "county clerk," but only one of their number who signs as "chairman." The law requires that

the county clerk sign the record of the proceedings of the board of commissioners, and attest the same with the seal of the county. It is not made one of the duties of the chairman of said board to sign, or in any manner attest, such record. The fact that the county clerk "wrote down" the proceedings cannot change its character. It is a private record. 5 Hill, 630; 7 Johns. 549; 24 Wend., 520.

The opinion of the court was delivered by

VALENTINE, J.: Only one question requires our special consideration in this case, and that is, whether John T. McWhirt and certain other persons acting with him were on the 16th of March, 1869, *de facto* the board of county commissioners of the county of Leavenworth. That they were not *de jure* said board, and that there was another set of men who were *de jure* said board, is conceded by both parties; but it is claimed by the plaintiff in error that said McWhirt and his associates were *de facto* said board.

On the 16th of March, 1869, the plaintiff presented to said McWhirt and his associates an account against said county for professional services as an attorney-at-law, and said McWhirt and his associates allowed it. The plaintiff then sued the county upon this allowance and not upon the original account. The counsel for the defendants not only claims that McWhirt and his associates were not the board of county commissioners either *de jure* or *de facto*, but he also claims that said account was illegal and void; that it was for services performed for said McWhirt and his associates as individuals, and not for the county of Leavenworth, nor for said McWhirt and his associates as officers; and that even if performed for the county, or for said McWhirt and his associates as officers, still the services were such as could be performed by the county attorney only, and therefore in any case the allowance itself was illegal and void, as the said plaintiff was not the county attorney. But as the plaintiff has not stated the nature of his said services in his petition below, and as none of the evidence introduced on the trial has been brought to this court, and as

28—8TH KAS.

the findings of the court below do not sufficiently show the character of his said services, we cannot determine this question with any degree of certainty and shall therefore not consider it.

Were said McWhirt and his associates *de facto* the board of county commissioners of the county of Leavenworth? The court below finds that " they were neither the county commissioners *de jure* nor *de facto*, but were usurpers, and had no authority to audit and allow the plaintiff's account;" and this finding we think is in harmony with the other findings. A *de facto* officer must be in fact the officer. He must be in the actual possession of the office, and have the same under his actual control. *De facto* means, in law, as well as elsewhere, " of fact; from, arising out of, or founded in fact; in fact, in deed; in point of fact; actually; really." Burrell's Law Dict. If the officer *de jure* is in possession of the office; if the officer *de jure* is also the officer *de facto*, then no other person can be an officer *de facto* for that office. Two persons cannot be officers *de facto* for the same office at the same time: *Boardman v. Holliday*, 10 Paige, 223, 232; *Morgan v. Quackenbush*, 22 Barb., 72, 80. And where an office has been created to be held by one person only, two or more persons cannot hold the same as tenants in common. In the present case the regular and *de jure* board of county commissioners were elected in November, 1867. They would, under the law, hold their offices until the second Monday of January, 1870: Art. 11, § 3, Const.; Comp. Laws, 500, § 40; Gen. Stat., 418, § 58; *Leavenworth Co. v. The State ex rel. Latta*, 5 Kas., 688. They had been in the actual possession, and had the exclusive control of their respective offices for more than a year before McWhirt and his associates claimed to be county commissioners. There is nothing in the record of this case that shows that any one of the offices had become vacant, nothing that shows that any one of such officers had died, resigned, removed from his district, or from the county, or had been removed from his office. There is nothing that shows that such officers or any one of them were ever ousted from office, or that they ever in any

manner abandoned the same; but they continued to be *de facto* as well as *de jure* county commissioners down to the time of the trial of this case; hence there was no room for McWhirt and his associates to become *de facto* county commissioners. Such offices were already filled by officers *de facto* and *de jure.*

Whether McWhirt and his associates had any color of right to said offices we do not choose to consider. The election under which they claimed was void, as there was no vacancy in the office of county commissioners at the time they were elected. (*Leavenworth Co. v. Latta,* 5 Kas., 688.) No canvass was ever made of said election except by themselves. The record does not show that they were ever recognized as county commissioners by any one except themselves and the plaintiff. No board or officer or person (except themselves and the plaintiff) ever declared them to be the board of county commissioners. Under these circumstances did they act under color of right? (*People ex rel. Kearney v. Carter,* 29 Barb., 208.) Neither do we choose to consider whether McWhirt and his associates could become officers *de facto* in the place of officers *de jure* who were already in possession, unless they got possession of the office *without a contest;* or if they got it through a contest whether they could become officers *de facto* in such a case until the *contest should be ended or abandoned* by the other party. (*The State v. Jones,* 19 Ind., 356.) This would probably have been one of the main questions in the case if all the facts had been presented to the court.

McWhirt and his associates never got possession of said offices. If they had been legally elected they should have taken possession of said offices on January 11th, 1869. (Gen. Stat., 418, § 58.) But they did not attempt to take possession of the same until February 2d, 1869. Then they met without any authority whatever, it not being the time for the board to meet, and being just one day after the regular board had adjourned, and declared themselves to be the board of county commissioners of Leavenworth county; but no other person, board, or officer, except the plaintiff, ever recognized them as

such. We are now speaking of what the record in this case shows. Possibly the facts may have been different. It is true, they "*met together in the clerk's office*," and the clerk "kept *a record* of their proceedings;" but the clerk never attested such record with his signature, nor with the seal of the county, as he does the record of the proceedings of the legally constituted board of county commissioners. (Gen. Stat., 263, § 43.) It seems the clerk did not choose to recognize them as a board of county commissioners. There is nothing to show that this record which was kept by the clerk was kept in the books of the county. It does not seem from the record in this case that McWhirt and his associates ever got possession of any of the property of the county, or of any of the records, books, papers, the seal, or of anything else belonging to the county or connected in any manner with the office of county commissioners. The clerk ceased to keep any record of their proceedings eight days before the said allowance of the said plaintiff's account, and no record of any kind was ever made of such allowance, and no county order was ever issued therefor. Under the circumstances of this case we do not think that McWhirt and his associates can be considered as county commissioners *de facto*. The judgment of the court below must therefore be affirmed.

KINGMAN, C. J., concurring.

BREWER, J., did not sit in the case.